Missouri Valley Bridge & Iron Company v. Malone.

## Opinion delivered May 8, 1922.

1. ADMIRALTY—INJURY ON VESSEL ENGAGED IN COMMERCE.—Under Federal Judicial Code, § 256, giving exclusive jurisdiction to the Federal courts in all civil causes of admiralty and maritime jurisdiction, to give such courts jurisdiction of an injury to an employee on a barge, it must be shown to be a vessel engaged in commerce and navigation, and hence such courts have no jurisdiction of an action for injuries on a barge in course of construction.

2. SEAMEN—FELLOW SERVANTS.—In a foreman's action for injury on a barge engaged in commerce and navigation, caused by a maul slipping from a workman's hand, the fellow-servant rule would not apply under U. S. Comp. Stat., § 8337a, providing that a seaman having command shall not be a fellow servant of those under his authority.

3. ADMIRALTY—COMMON-LAW REMEDY.—Under Federal Judicial Code, § 256, vesting in United States courts exclusive jurisdiction in admiralty and maritime causes, but in all cases "saving to suitors the right of a common-law remedy where the common law is competent to give it," an employee injured on a barge on the Arkansas River had a remedy in an Arkansas common-law court.

4. MASTER AND SERVANT—NEGLIGENCE OF SERVANT.—Under Crawford & Moses' Dig., § 7137, a corporation engaged in constructing a barge is liable for an injury to its foreman caused by the negligence of a workman in allowing a maul to slip from his hand.

5. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—INSTRUCTION.—In an action against a corporation for injury to a servant struck by a maul held by a fellow servant, an instruction permitting the jury to find defendant liable if the fellow servant let the maul lip from his hand was erroneous as authorizing a recovery whether the fellow servant was negligent or not.

6. TRIAL—GENERAL OBJECTION TO INSTRUCTION.—Where instructions were inherently erroneous, a general objection to them was sufficient.

Appealed from Perry Circuit Court; *John W. Wade*, Judge; reversed.

*E. G. Shoffner, E. H. Heming* and *Mehaffy, Donham & Mehaffy,* for appellant.

Both the pleadings and proof fix the place of the work on a barge or vessel on the Arkansas River, a navi-

gable· stream.   The plaintiff, therefore, might have brought his suit under the general maritime law; otherwise, he is bound to sue under the common law.   Judicial Code, § 256.   Jurisdiction depends upon whether the tort was committed on navigable waters.   1 R. C. L. 409-410; *Id.* 413, 414, 415; *Id.* 417, 118 U. S. 610, 30 L. Ed. 274; 119 U. S. 388, 30 L. Ed. 477; 195 U. S. 364, 49 L. Ed. 236; 221 Fed. 105; 223 Fed. 242; 259 Fed. 304; 244 U. S. 205; 1 Corpus Juris 1253; *Id.* 1256, 1257, 1264, 1265, 1285; 134 Fed. 749, 752; 141 *Id.* 270; 190 *Id.* 229; 71 *Id.* 712; 70 U. S. 20; 18 L. Ed. 125; 62 L. Ed. 1171; 63 L. Ed. 261.

*Troy W. Lewis, J. H. Bowen* and *Pace, Campbell & Davis,* for appellee.

Appellee's right to a recovery is not affected by the Federal statute with respect to jurisdiction.   To allege that a barge was being constructed on the Arkansas ·River does not mean that it was on the waters of the river.   137 Ark. 6; 60 *Id.* 409; 134 *Id.* 273.   But, aside from that, these maritime laws were not involved because the barge was not a vessel engaged in commerce and navigation.   38 Fed. 158; 34 Cal. 679; 1 Corpus Juris 1251, § 16.

If the barge be held to be such a vessel as is contemplated by the maritime law, then § 8337-A, U. S. Comp. Statutes, would apply.

The Federal statute in respect to maritime matters leave the victims of maritime torts free to bring and prosecute their causes of action in the State courts where the tort was committed, in accordance with the law existing in the State at the time it was committed, whether that law was the original common law or as amended by statute.   135 S. W. 425; 9 R. I. 419; 11 Am. Rep. 274; 83 U. S. 522, 21 L. Ed. 369; 56 N. Y. 1; 74 Ga. 18; 1 Corpus Juris, 1253, § 23; 77 N. Y. 546.

Wood, J.   This action was instituted by the appellee against the appellant, the Missouri Valley Bridge & Iron Company, a Kansas corporation.   The appellee alleged that on the 13th day of January, 1921, the corpora-

tion was constructing a barge on the Arkansas River at the foot of North Commerce Street in the city of Little Rock, Arkansas; that the appellee was an employee of the corporation as foreman in charge of a crew of workmen upon said barge; that while so employed the appellee, on account of the carelessness and negligence of the corporation and one of its employees, a member of the crew, was struck on the right leg with a sledge-hammer and painfully and permanently injured; that the corporation's employees were engaged in constructing a deck or floor upon the corporation's barge out of heavy timbers or planks, which were being fastened down with spikes; that while appellee was directing the work one of the workmen, named Winkler, carelessly and negligently allowed the sledge-hammer to slip and fly from his hand and strike appellee on his right leg with great force. The appellee then alleges the nature of the injury and its effect upon him, and by reason thereof he alleges that he was damaged in the sum of $25,000, for which he prayed judgment.

The corporation answered, denying all the material allegations of the complaint, and set up the affirmative defenses of contributory negligence and assumed risk, and further alleged "that, if the plaintiff was injured at the time and in the manner alleged in his complaint, he was injured while working on the Arkansas River, a navigable stream, and doing work and labor on a barge in said stream, as was also 'Winkler, and this defendant says that it was in no way liable for an injury resulting as alleged in plaintiff's complaint."

The testimony on behalf of the appellee tended to prove that in January, 1921, the appellee was the foreman of a barge crew of six or eight men who were at work on a barge for the corporation in the Arkansas River. The appellee directed Winkler, one of the crew, to drive a plank end-ways in order to make the joint a little tighter. Winkler, while doing this, let the maul slip from his hand, which struck the appellee, and he went

off of the barge limping and said he was hurt. In order to drive up the plank, it was necessary for Winkler to strike pretty hard blows. Winkler, at the time, was standing astride the plank striking the end of the same between his legs. The appellee was standing at the other end of the plank right over the joint which he was having closed.

The appellee himself testified substantially to the same effect as the above. He stated that he was standing over the joint watching that all the time, and his attention for the moment was directed to another man of the crew to whom he had given some directions, and all of a sudden the hammer flew out of Winkler's hand and struck the appellee. He described where the hammer struck him and the nature of the injuries which it produced, and which it is unnecessary to detail.

Winkler testified on behalf of the appellant to the effect that he was employed by the appellant and working with the barge crew under the direction of the appellee. He hit the end of the plank to drive the same up. It was a cold morning and frosty, and the handle was slick, and witness' hands were numb. Witness did not have any gloves on, and the hammer slipped out of his hands. He was doing the work in the usual way except he was standing straddle of the maul striking with the same between his legs. Witness had been a carpenter for five years and was exercising the same care that he was in the habit of exercising in that sort of work—was trying to hit the plank, and missed it. He didn't intend to turn it loose. It was about noon, and the day was cloudy. It was an ordinary hammer in common everyday use—an eight-pound maul.

Among other instructions given at the request of the appellee the court gave the following:

"No. 1. If the plaintiff, L. V. Malone, was in the employ of the Missouri Valley Bridge & Iron Company, at work in the construction of a barge for the defendant, in the performance of his duty, and was using

due care for his own safety, and had not assumed the risk and was injured by want of ordinary care of the defendant, then the plaintiff is entitled to recover. It is for you to say, from all of the evidence in the case, whether plaintiff was injured by any failure on his part to perform his duty while at work on said barge, and whether he was exercising due care for his own safety or had assumed the risk at the time of the injury, also whether the defendant or its agents and servants failed to exercise ordinary care to protect him from danger alleged in the complaint while in the performance of his duty, and whether such want of ordinary care, if so shown, was the proximate cause of the injury.''

''No. 2. While the servant assumes all the ordinary risks incident to his employment, yet a duty rests upon the company to commit no act of negligence whereby he may suffer injury and to exercise ordinary care to protect him from danger, and in this case, if you find from a preponderance of the evidence that the plaintiff was engaged in the performance of his duties at work in the construction of a barge for the defendant, and that one of the defendant's agents and servants, who was at work upon the floor of said barge, while driving a piece of the decking in place with a top maul, let the maul slip from his hand, and that said maul struck the plaintiff and injured him, and that the defendant thereby failed to exercise ordinary care to protect plaintiff from danger alleged in the complaint, and that the act of the said agent and servant of the defendant in letting said maul slip from his hand was the proximate cause of the injury, and that plaintiff at the time was exercising ordinary care for his own safety and had not assumed the risk, you will be authorized to find for the plaintiff and assess his damages at such a sum as will, from the evidence, fully compensate him for the injuries received.''

The court gave the above and other instructions at the instance of the appellee, which authorized the appellee to recover if the jury found that the alleged injury was caused by the negligence of a fellow-servant.

At the instance of appellant the court granted, among others, the following prayer for instruction:

"No. 12.   You are instructed that the master is not an insurer of the safety of the servant, and the mere fact that there was an accident, and that plaintiff was injured thereby, is not sufficient to justify a recovery, but, before you could find a verdict against the defendant, the plaintiff would have to show by a fair preponderance of the evidence not only that plaintiff was in the employ of defendant, and that he was injured by the act of another servant of defendant, but he must also show by a fair preponderance of the evidence that the injury was caused by the negligence of the fellow-servant; and if he fails to show any of these facts by a fair preponderance of the evidence, your verdict must be for the defendant."

The appellant asked the court to instruct the jury to the effect that if the appellee and Winkler were fellow-servants appellee could not recover for an injury to him caused by the alleged negligence of Winkler.   The jury returned a verdict in favor of the appellee in the sum of $8,000.   Judgment was rendered in favor of the appellee for that sum, from which is this appeal.

1.   Section 256 of the Federal Judicial Code provides in part as follows: "The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned shall be exclusive of the courts of the several States * * * * of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it."

The appellant contends that under the above section appellee cannot maintain this suit because the injury occurred on a barge in the Arkansas River, a navigable stream, and because, under the rules of the common law, one servant cannot recover damages from the master for injuries done through the negligence of a fellow-servant. This contention cannot be sustained for several reasons.

First, the above section has no application. The barge on which the alleged injury occurred is not alleged and proved to be a vessel engaged in commerce and navigation. This was essential to bring the appellee's cause within the admiralty and maritime jurisdiction. See *Peoples* v. *Steamer America,* 34 Cal. 679; 1 C. J. p. 1251, § 16.

In the second place, if the appellant had alleged and proved that the barge, at the time of appellee's injury, was engaged in commerce and navigation on the waters of the United States, then sec. 8337 (a) of the United States Compiled Statutes, 1916, would apply. That section provides that "in any suit to recover damages for any injury sustained on board vessel or in its service, seamen having command shall not be fellow-servants with those under their authority."

In the third place, if the Federal court had jurisdiction of appellee's alleged cause of action under the above section, then under the same section the State court exercising common-law jurisdiction would also have jurisdiction of the cause, and such court should try the cause according to the rules of the State law applicable to such a tort at the time of its commission. The Judicial Code saves "to suitors in all cases the right of a common-law remedy." Suitors under this statute have a remedy for their rights in a common-law court of the State under the rules of law existing when those rights accrue. *Johnson* v. *Westfield,* 135 S. W. (Ky.) 425; *Walter* v. *Kierstead,* 74 Ga. 18; *Dougan* v. *Champlin Transportation Co.,* 56 N. Y. 1; *Chase* v. *Amer. Steamboat Co.,* 9 R. I. 419, 11 Am. Rep. 274. See also *Amer. Steamboat Co.* v. *Chase,* 83 U. S. 522, 21 L. Ed. 369; *McDonald* v. *Mallory,* 77 N. Y. 546; 1 C. J. p. 1253. There was no error in the rulings of the court on the above question.

2. The appellant contends that the court erred in giving appellee's prayers for instructions Nos. 1 and 2 set out above. Taken together, these instructions tell the

jury that the duty rested upon the company to commit no act of negligence whereby a servant may be injured and to exercise ordinary care to protect him from danger. No issue of negligence predicated upon the failure of the appellant, its agents or servants, to exercise ordinary care to protect the appellee from dangers incident to his employment, is raised in the pleadings. It is, of course, hornbrook law that the master owes his servants the duty of exercising ordinary care to furnish him a safe place in which to work and safe implements with which to perform his duties, and the further duty of exercising ordinary care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service. Nowhere is it alleged in the complaint that the appellant was negligent because it had failed to perform any of these duties. The only negligence alleged in the complaint is that "one of the defendant's employees named Winkler carelessly and negligently allowed the sledge-hammer or top maul which he was using to slip and fly from his hand and strike plaintiff on his right leg with great force," etc. If the servant was negligent in the manner alleged, to be sure the appellant would be liable for such negligence. Sec. 7137. *Ozan Lbr. Co.* v. *Biddie,* 87 Ark. 587; *Aluminum Co.* v. *Ramsey,* 89 Ark. 522; *Missouri & N. A. R. Co.* v. *Van Zandt,* 100 Ark. 462; *Board of Imp.* v. *Moreland,* 94 Ark. 380.

But the instructions broadly tell the jury that it was the duty of the appellant "to commit no act of negligence whereby he (appellee) may suffer injury and to exercise ordinary care to protect him from danger," and that, if appellant failed to exercise ordinary care to protect the appellee from the danger alleged in the complaint, appellant would be liable. Instruction No. 2 above also tells the jury that if "one of the defendant's servants * * * * let the maul slip from his hand and that said maul struck the plaintiff and injured him, and that the defendant thereby failed to exercise ordinary care to protect plaintiff from danger, to find for the plaintiff," etc. This part

of the instruction permitted the jury to find that the appellant had not exercised ordinary care to protect the appellee from danger if his fellow-servant, Winkler, let the maul slip from his hand, whether Winkler's act in so doing was a negligent act or not. In other words, under this part of the instruction the jury could return a verdict in favor of the appellee although it may have found that Winkler let the maul slip accidentally and without any negligence whatever. Such is not the law.

The instructions in the manner drawn were abstract, argumentative and misleading. These instructions were inherently erroneous, and a general objection to them was sufficient. However, if a specific objection were necessary, then instruction No. 12, *supra,* given at the instance of appellant, was tantamount to such objection. Instruction No. 12 is in conflict with instructions Nos. 1 and 2, and the charge as a whole was not consistent.

We find no other errors prejudicial to the appellant in the giving and refusing of prayers for instructions. In view of a new trial we deem it improper to set out and comment upon the testimony bearing upon the assignment that the verdict was excessive. For the error in granting appellee's prayers for instructions Nos. 1 and 2 the judgment is reversed, and the cause is remanded for a new trial.