SLIP OPINION

Cite as 2014 Ark. App. 705

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-179

JAMES WASHINGTON d/b/a
WASHINGTON REPAIR SERVICE
APPELLANT

V.

KINGRIDGE ENTERPRISES, INC.
APPELLEE

Opinion Delivered DECEMBER 10, 2014

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
SECOND DIVISION
[NO. 60CV-12-5991]

HONORABLE CHRISTOPHER
CHARLES PIAZZA, JUDGE

AFFIRMED

**KENNETH S. HIXSON, Judge**

Appellant James Washington d/b/a Washington Repair Service ("Washington") appeals the October 31, 2013 judgment entered against him and in favor of appellee Kingridge Enterprises, Inc. ("Kingridge"), following a bench trial on competing breach-of-contract claims. Washington appeals the trial court's findings that Kingridge prevailed on breach of contract and that Kingridge was entitled to a $5500 attorney-fee award. We affirm the trial court's judgment.

As part of a renovation project, Kingridge hired Washington to install heating-ventilation-and-air-conditioning (HVAC) units and duct work in a commercial building located on Broadway Street in Little Rock. The parties executed a written contract in October 2012, in which Washington agreed to provide all material, labor, and permits, and to complete the job in a timely and workmanlike fashion for a contract price of $17,500. The

contract was not completed on time or in accordance with the written terms. In December 2012, Kingridge filed suit in Pulaski County Circuit Court for breach of contract and replevin of certain materials purchased by Kingridge but in the possession of Washington. In February 2013, Washington counterclaimed for breach of contract for Kingridge's failure to pay for the labor he invested on the job. Although Washington resisted the replevin claim, in March 2013, the trial court ordered Washington to return the HVAC equipment purchased by Kingridge. In April 2013, Washington filed another breach-of-contract claim alleging that Kingridge failed to pay the entire contract price of $17,500.

After the September 2013 bench trial, the trial judge concluded that Kingridge sustained $2262 in damages, offset by Washington's entitlement to $1000 for unpaid labor. The result was a net judgment in Kingridge's favor of $1262. The trial court awarded Kingridge $215 in costs and $5500 in attorney fees. Washington appeals, arguing that the trial court erred (1) by not finding that Kingridge waived any breach by continuing to accept Washington's work after the initial alleged breaches; (2) by not finding that Kingridge was guilty of the first material breach of contract; and (3) by awarding attorney fees to Kingridge instead of Washington, or alternatively, by improperly awarding attorney fees that were not reasonable or supported by the evidence.

In review of a bench trial, we determine whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Bowen v. Gardner*, 2013 Ark. App. 52, 425 S.W.3d 875. Disputed facts and determinations of credibility of the witnesses are within the province of the fact-finder. *Id*. A trial court's conclusions of law, however,

SLIP OPINION

are reviewed de novo and are given no deference on appeal. *Id*. A prevailing party in a breach-of-contract action is permitted to seek attorney fees. *See* Ark. Code Ann. § 16–22–308 (Repl. 1999). The standard of review for an attorney-fee award is abuse of discretion. *Farm Bureau Cas. Ins. Co. v. Krouse*, 2010 Ark. App. 493, 375 S.W.3d 763.

To place these arguments in context, we examine the evidence presented at trial in greater detail. Kingridge was renovating a commercial building. Washington submitted a bid to install new four-ton and five-ton package HVAC units with duct work, and to repair old duct work, for $17,500. Kingridge accepted the bid, and the parties entered into a detailed four-page-typed contract on October 23, 2012. The contract provided in part that Washington had reviewed Kingridge's city-approved architectural plans and specifications, and Washington agreed to "furnish all material, equipment and perform all labor necessary to complete" the HVAC "modifications, relocation(s) and installations per the Plans." The contract attached, as exhibits, Washington's one-page proposal bid, as well as Kingridge's architectural plans and specifications. In the contract, the parties agreed that "time is of the essence" and that the work was to be "substantially completed on or before" November 26, 2012. The agreed price was to be paid in percentage installments (35%, 40%, and 25%) triggered by defined periods of satisfactory progress on the job. Washington agreed to complete the job "in a workmanship like manner and in compliance with all building codes and other applicable laws" and agreed to obtain at his own expense "all permits necessary for the work to be performed."

SLIP OPINION

Work commenced in early November. Almost immediately, Washington informed Kingridge that he was financially unable to purchase the HVAC materials or a city permit required for the project. Consequently, Kingridge purchased the HVAC systems, purportedly costing in excess of $6700. Kingridge also paid $183 for a necessary city permit. On November 13, Washington asked for and received a loan of $400 from Kingridge. Washington signed an interest-bearing promissory note to ensure repayment, which was anticipated to be repaid out of his earnings on this job. The job was not completed by November 26, and attempts to resolve the problems were unsuccessful, so Kingridge terminated the contract. Kingridge contended that Washington's work was not satisfactory at any point along the project and that Washington refused to work out a mutually agreeable solution. Washington countered that Kingridge was responsible for several of the problems, refused to allow him to complete the job, and failed to pay for his labor.

After the contract had been terminated, Washington refused to deliver the HVAC units to Kingridge. In December 2012, Kingridge sued Washington for return of the HVAC equipment it had purchased (the replevin action), for breach–of–contract damages that included the additional costs to get the job completed in a satisfactory manner, and for "additional administrative costs" of $2500. Kingridge also asked for court costs and attorney fees. Washington resisted the breach-of-contract and replevin claims. In February 2013, Washington filed a counterclaim alleging that Kingridge was the party that breached the contract and sought payment of $5543.66 for "the work that was completed prior to [Kingridge's] breach." Washington also asked for court costs and attorney fees.

The court held a hearing on the replevin cause of action in March 2013, and the trial judge ordered Washington to immediately deliver the specifically described HVAC equipment to Kingridge. Shortly after the order for delivery, in April 2013, Washington filed another counterclaim for breach of contract, seeking the full $17,500 contract price, plus his costs and attorney fees.

Following discovery, a bench trial was conducted in September 2013, at the conclusion of which the circuit judge announced his decision from the bench. The judge considered the testimony of several witnesses, one of whom was Washington, as well as multiple documents entered into evidence. The judge disallowed Kingridge the $2500 in administrative costs it sought, but he awarded Kingridge damages in the amount of the difference between the contract price and what it cost Kingridge to have the job completed, which totaled $2262. The judge then awarded Washington $1000 for the value of his labor. This computed to a net judgment of $1262 in Kingridge's favor. The judge then announced that he would award a reasonable attorney fee to Kingridge. The judgment entered in favor of Kingridge included damages of $1262, costs of $215, and attorney fees in the amount of $5500. Washington filed a timely notice of appeal.

Appellant's first two points on appeal are so closely related that they will be considered together. Washington concedes that the contract required him to pay for the permit and the equipment, which he did not do. Washington argues that because Kingridge paid for its own equipment and permit (which were obviously breaches of the agreement), Kingridge waived its right to enforce the contract against Washington. He cites to *Clear Creek Oil & Gas Co.*

*v. Brunk*, 160 Ark. 574, 255 S.W. 7 (1923), *Stephens v. West Pontiac-GMC, Inc.*, 7 Ark. App. 275, 647 S.W.2d 492 (1983), and *Southern Pipe Coating, Inc. v. Spear & Wood, Mfg. Co.*, 235 Ark. 1021, 363 S.W.2d 912 (1963), as support for this argument. Washington also argues that Kingridge was the materially breaching party that terminated the contract by not allowing him to finish, entitling him to recover on his breach–of–contract claim, citing to *Southern Pipe Coating, supra.* We disagree that the trial court clearly erred.

A material breach of a contract occurs when there is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party. *Spann v. Lovett & Co., Ltd.*, 2012 Ark. App. 107, 389 S.W.3d 77; *Roberts Contracting Co. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1. An influential circumstance in determining whether a breach is material is the extent to which the injured party will obtain the substantial benefit that he reasonably anticipated. *Boellner v. Clinical Study Ctrs., LLC*, 2011 Ark. 83, 378 S.W.3d 745.

While Kingridge allowed Washington to continue to provide labor after it purchased the HVAC materials and permit, the *material* breach was Washington's failure to provide competent workmanship in a timely fashion that complied with city codes and the renovation plans. Kingridge was compensated for the cost to complete the contract after Washington's breach. Washington was compensated for the reasonable value of labor provided before termination of the contract. These were questions of fact pertaining to whether the breaches were material and when they occurred. We hold that the trial court's factual findings are not clearly erroneous. We affirm on the first two points on appeal.

Lastly, Washington contends that the trial court erred in awarding attorney fees because (1) he (Washington) should have prevailed on points one and two above, and (2) even if fees were permissible, there is no evidence to substantiate the attorney fees or any discussion of the many factors to be considered by a trial court pursuant to *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). We dispose of Washington's first argument by affirming the judgment in favor of Kingridge. We dispose of Washington's second argument without reaching the merits because Washington has not preserved the issue for appellate review.

Typically, the prevailing party files a posttrial motion for attorney fees under the procedure set forth in Arkansas Rule of Civil Procedure 54(e). In this case, however, no posttrial Rule 54(e) motion was filed. The trial judge announced from the bench that he would award a reasonable attorney fee to Kingridge, asking Kingridge's attorney to prepare the precedent. Washington did not object. A few weeks later, judgment was filed, reciting a $5500 attorney-fee award. Washington did not file any posttrial motion objecting to the fees, before or after judgment was filed, and instead filed a notice of appeal from the judgment.

To preserve the issue of attorney fees for review on appeal, an appellant must raise the issue to the trial court "at least by filing a motion to amend the judgment pursuant to Rule 52(b)." *Farm Bureau Mut. Ins. Co. of Ark. v. David*, 324 Ark. 387, 393–94, 921 S.W.2d 930, 933 (1996). Likewise, in *Zhan v. Sherman,* 323 Ark. 172, 913 S.W.2d 776 (1996), our supreme court rejected Zhan's challenge on appeal to the trial court's award of court costs to Sherman on the basis that Zhan failed to preserve it for appellate review. The *Zhan* court

7

held that if Zhan believed the trial court to have erred in awarding costs, Zhan should have raised the issue to the trial court by means of a postjudgment motion under Arkansas Rule of Civil Procedure 52. *Zhan*, 323 Ark. at 177, 913 S.W.2d at 779. *See also Turner v. Brandt*, 100 Ark. App. 350, 353, 268 S.W.3d 924, 925–26 (2007) (holding attorney-fee issue waived on appeal for failure to raise the issue to the trial court, "perhaps via a motion to amend the judgment pursuant to Arkansas Rule of Civil Procedure 52(b)"). Here, Washington generally denied that Kingridge was entitled to attorney fees in his answer, but he failed to object or make any record before the trial court, as required by our appellate courts. Accordingly, we do not address the merits of that issue.

Affirmed.

HARRISON and WOOD, JJ., agree.

*Wallace, Martin, Duke & Russell PLLC*, by: *Dale B. Duke*, for appellant.

*Stuart Law Firm, P.A.*, by: *Ginger M. Stuart*, for appellee.